**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

CHRISTINA FAVA, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

GIGGLE LLC, D/B/A GIGGLE FINANCE
        Defendant.

Case No. 1:25-cv-25494-DPG

**DEFENDANT GIGGLE LLC D/B/A GIGGLE FINANCE'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO**
**FILE FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant Giggle, LLC d/b/a Giggle Finance ("Giggle"), by and through counsel, submits the following in opposition to Plaintiff's Motion for Leave (the "Motion," ECF No. 20) seeking to amend Plaintiff's Class Action Complaint (the "Complaint," ECF No. 1, Ex. A) with the Proposed First Amended Class Action Complaint (the "Proposed Amended Complaint," ECF No. 20-1).

**I.   Introduction.**

On September 22, 2025, Plaintiff filed the Complaint commencing this putative class action and asserting common law causes of action for negligence, breach of implied contract, and breach of the implied covenant of good faith and fair dealing. ECF No. 1, Ex. A.

On December 1, 2025, Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief can be granted. ECF No. 6. As set forth more fully in that motion, as well as in Defendant's reply in support (ECF No. 18), Defendant maintains that the Complaint's allegations are deficient in several respects, including (1) by violating Rule 8 as a so-called shotgun pleading, (2) inadequately pleading Plaintiff's various theories of breach underpinning her negligence claim, (3) inadequately alleging causation in support of her negligence claim, (4) failing to sufficiently allege the requisite invitation or

solicitation to provide personal information in exchange for data security services so as to state a viable claim for breach of implied contract, (5) failing to adequately plead the existence of a contract with express terms which could give rise to a claim for breach of the implied covenant of good faith and fair dealing, (6) failing to allege in a non-conclusory, Rule 8-compliant manner facts to plausibly show the conscious and deliberate act by Defendant necessary to state a claim for breach of the implied covenant of good faith and fair dealing, and (7) failing to allege cognizable damages to support any of the asserted causes of action.

While Defendant's Motion remains pending before the Court, Plaintiff now seeks to amend the Complaint. As set forth herein, leave to amend should not be granted in this particular instance due to numerous unique issues, ranging from mere futility to a substantial conflict of interest with the potential to jeopardize the integrity of these proceedings and offend all notions of justice. To the extent the Court sees fit to nevertheless allow the amendment to stand, Defendant would respectfully renew the applicable portions of its motion to dismiss (ECF No. 6) and reply in support thereof (ECF No. 18) and/or moves to strike the offending class allegation as detailed below.

## II.  Leave to Amend Should Be Denied.

A motion for leave to amend is properly denied "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Passage Health Int'l, LLC v. USAble HMO, Inc.*, No. 0:23-CV-62302, 2024 WL 3617472, at *1 (S.D. Fla. Aug. 1, 2024) (quoting *In re Engle Cases*, 767 F.3d 1082, 1108–09 (11th Cir. 2014)). "Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal." *Id.* (quoting *Patel v. Ga. Dep't BHDD*, 485 Fed. Appx. 982, 982 (11th Cir. 2012)).

The only substantive proposed amendments here are found in Paragraphs 19–28 & 30 of Plaintiff's Proposed Amended Complaint, which offer brand new allegations seeking to address the original Complaint's complete and utter failure to plead any facts that would raise Plaintiff's claims for damages above a speculative level.[1]  Without conceding at this juncture whether these new allegations are in fact sufficient to allege cognizable damages, it is clear that this is the only pleading deficiency which the Proposed Amended Complaint could even conceivably address.  In other words, the Proposed Amended Complaint faces with full force all of the other arguments set forth in Defendant's motion to dismiss (ECF No. 6) and reply in support thereof (ECF No. 18). In this way, Plaintiff's request for leave to amend is—at least in part—futile on this basis alone.

As noted above, Defendant has also raised *inter alia* Plaintiff's violation of Rule 8 through shotgun pleading, inadequate breach and causation allegations to state a viable claim for negligence, insufficient pleading to properly raise a claim for breach of implied contract, and deficient factual bases and *mens rea* allegations so as to successfully assert a claim for breach of the implied covenant of good faith and fair dealing.  Thus, if the Court were inclined to permit the proposed amendment, Defendant maintains that dismissal of the Proposed Amended Complaint on these grounds would be appropriate and therefore the amendment is futile.  Indeed, given the impropriety of condoning repeated failure to cure such deficiencies by serial amendment, and

---

[1] Other changes include unnecessarily specifying that September 2025 is "almost one year later" than November 2024 (Compl. ¶ 3; Proposed Am. Compl. ¶ 3); updating the jurisdiction and venue section in light of this matter's removal to this Court (Compl. ¶¶ 6–7; Proposed Am. Compl. ¶¶ 6–9); correcting the original Complaint's failure to allege Plaintiff's state of citizenship (Compl. ¶ 8; Proposed Am. Compl. ¶ 10); alleging Defendant's mission and core values (Compl. ¶ 18; Proposed Am. Compl. ¶ 31); updating the class action allegations to refer to the Federal Rules of Civil Procedure rather than the Florida Rules of Civil Procedure (Compl. ¶ 20; Proposed Am. Compl. ¶ 33); slightly altering one paragraph (Compl. ¶ 56; Proposed Am. Compl. ¶ 69) and removing five others (Compl. ¶¶ 58, 64–67) erroneously discussing healthcare records and medical identity theft inapplicable here; and updating the wherefore clause so as to refer federal and not state law).

given Plaintiff's apparent satisfaction with the remainder of its Complaint—including each problematic cause of action which remain untouched in the Proposed Amended Complaint notwithstanding Defendant's pending motion to dismiss—Defendant maintains that dismissal for these reasons without further leave to amend beyond the submitted Proposed Amended Complaint is warranted.

### 1. *Additional unique causation issues further render amendment futile.*

In addition to the foregoing, Plaintiff's Proposed Amended Complaint is futile because even the additional allegations regarding her purported damages cannot salvage her claim from unique causation issues specific to Plaintiff herself.

Amendment is particularly futile here because Plaintiff will not be able to sufficiently establish causation in light of the fact that her personally identifying information has been impacted in several recent data breaches, including breaches which pre-date the alleged Giggle incident. *See* Robinson Declaration (attached hereto as Exhibit A) at ¶¶ 10–11. In 2021, Plaintiff was impacted by the AT&T breach, including her name, address, phone number, and email address; in 2023, Plaintiff's credit card information was released by the Eye4Fraud data breach; in 2024, Plaintiff's social security number was released after the April 2024 National Public Data breach; and Plaintiff has recently alleged and settled class-wide claims that her information was impacted by the June 2024 Evolve Bank data breach. Robinson Declaration (Ex. A) at ¶¶ 10–11.

Thus, even if Plaintiff's Proposed Amended Complaint could conceivably be read to add allegations in support of causation, the amendment is nevertheless futile.

### 2. *A substantial conflict of interest merits judicial intervention at this stage and renders amendment futile and prejudicial.*

Rule 23(c)(1) directs that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class

4

action." Fed. R .Civ. P. 23(c)(1)(A). Indeed, "Rule 23 demands an early consideration of class certification, including its practical implications for case manageability" in order to avoid undue delay in consideration of the class-certification issue that would "introduc[e] needless and avoidable complexity into an already complex case." *Vega v. T–Mobile USA, Inc*., 564 F.3d 1256, 1279 (11th Cir. 2009).

Although courts conflict as to the resolution of class certification issues at the pleading stage, there is sufficient president to establish that, at least in some cases, such early evaluation is proper and necessary. *See, e.g.*, *Saunders v. BellSouth Adver. & Pub. Corp*., 1998 WL 1051961, at *1 n.1 (S.D. Fla. Nov. 10, 1998) (motion to dismiss class-action allegations procedurally proper under Rule 23(c)(1)'s directive to rule as soon as practicable). Given the prejudice that results to the Defendant if amendment is permitted, this is one of those rare cases.

One of the prerequisites to maintaining a class action is the requirement of Rule 23(a)(4) that the named plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry is meant to identify any substantial conflicts of interest between the plaintiffs and the rest of the class. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Thus, part of the adequacy analysis under Rule 23(a)(4) relates to "whether the proposed class representative has interests antagonistic to the class." *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314 (S.D. Fla. 2001). Moreover, "named plaintiffs might not qualify as adequate class representatives because they do not possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *Kilpatrick v. J.C. Bradford & Co*., 827 F.2d 718, 726 (11th Cir. 1987). Here, Plaintiff has a substantial conflict of interest that renders her antagonistic to the putative class she seeks to represent in a deeply troubling and egregious manner.

5

To be sure, the mere fact that a representative plaintiff might have a criminal history is not—in and of itself—a factor as to whether that individual can serve as an adequate class representative. *See, e.g.*, *Connor v. Permanent Gen. Assurance Corp.*, No. 9:20-CV-81979-WPD, 2022 WL 1642866, at *7 (S.D. Fla. Apr. 11, 2022) ("Being convicted of a felony or serving time in prison does not automatically disqualify a class representative." (citations omitted)); *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 328 (S.D. Fla. 1996) ("[T]he Court notes that persons indicted or convicted of crimes may be adequate class representatives."). But the nature of their criminal history—particularly in relation to the nature of the putative class action—does matter.

For example, this Court held that a class representative who had twice been publicly cited as violating securities laws was inadequate to serve as a lead plaintiff in a securities litigation. *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002). Similarly, a sister court held that a class representative who had been found guilty of writing several worthless checks was not adequate to represent a putative class in a Fair Debt Collection Practices Act and Florida Consumer Collection Practices Act litigation. *Hall v. Nat'l Recovery Sys., Inc.*, No. 96-132-CIV-T-17(C), 1996 WL 467512, at *4 (M.D. Fla. Aug. 9, 1996). *Cf. e.g.*, *Weaver v. Green Sols. of Fla. LLC*, No. 6:23-CV-2059-CEM-LHP, 2025 WL 1811564, at *7 (M.D. Fla. May 5, 2025), *report and recommendation adopted*, No. 6:23-CV-2059-CEM-LHP, 2025 WL 1809827 (M.D. Fla. July 1, 2025) (criminal history of stolen property, sexual battery, larceny, grand theft, burglary, and trespass did not preclude adequacy to represent class in Telephone Consumer Protection Act and Florida Telephone Solicitations Act case regarding telemarketing calls); *Connor*, 2022 WL

1642866, at *7 (criminal history of kidnapping did not preclude adequacy to represent class in auto insurance policy holders claiming improper premium refunds).[2]

Ultimately, "[c]lass representatives must have 'the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *Hively v. Northlake Foods, Inc*., 191 F.R.D. 661, 668 (M.D. Fla. 2000). Plaintiff here does not.

Plaintiff's Proposed Amended Complaint (and original Complaint for that matter) expends many pages discussing in broad, general terms the ramifications that victims of identity theft and misuse can face. Plaintiff characterizes herself as one of these victims, and her new proposed factual allegations involve alleged fraudulent financial accounts opened in her name; fraudulent charges on her credit cards, debit cards, and bank accounts; and a purported inability to open new lines of credit and accounts in her name. *See, e.g.*, Proposed Am. Comp. ¶¶ 21–26.

But the reality is that Plaintiff has an extensive, very relevant public criminal history of pleading guilty to *obtaining and misusing other people's personally identifying information* in order to place fraudulent credit card charges on stolen card numbers, open bank accounts and extensive lines of credit in actual victims' names, possessing and selling documents to establish false identities, forging counterfeit identification documents, and generally unlawfully using the

---

[2] "Although evidence of ongoing criminal prosecution may not ultimately be admissible at trial, the Court finds that it can consider this evidence in determining class certification." *Pines Nursing Home (77), Inc v. Rehabcare Grp., Inc*., No. 1:14-CV-20039-UU, 2014 WL 12531512, at *4 (S.D. Fla. June 20, 2014) (holding it would be "absurd to ignore" relevant criminal history, and explaining that "Courts confronted with Rule 23 issues may consider evidence that may not ultimately be admissible at trial." (cite omitted)).

identification information of others. *See* Robinson Declaration (Ex. A) at ¶¶ 13–15.[3] [4]

Most recently, Fava was charged in August 2025 in federal court with one count of possession of fifteen or more counterfeit or unauthorized access devices. *USA v. Christina Fava*, USDC for the District of Nevada, Case No. 2:25-cr-00261-RFBMDC-1. On October 2, 2025, Fava signed a waiver of indictment and entered a guilty plea agreement, which details how Fava received a large amount of compromised PII—including names, addresses, dates of birth, SSNs, bank account information, and credit card information—which she used to create fraudulent identification documents including counterfeit drivers' licenses, counterfeit social security cards, rechargeable debit cards, credit reports, bank account documents, postal mailbox rental agreements, and unauthorized credit cards, as well as to open bank accounts and apply for lines of credit in the victims' identities, gaining access to over $78,000 in fraudulent lines of credit she had opened in victims' identities. Robinson Declaration (Ex. A) at ¶ 14.

The mere fact that Plaintiff currently faces sentencing on February 17, 2026 after pleading guilty to charges of this nature directly impacts her ability to serve as an adequate class representative seeking to "protect" the putative class members from the very same types harms she herself has pled guilty of perpetrating over and over again. This documented guilty plea—like the securities violations in *Newman*, 209 F.R.D. 499, or the false checks in *Hall*, 1996 WL 467512—are directly antagonistic to the stated interests of the putative class members, create a substantial conflict of interest, and call into severely concerning question how Plaintiff could demonstrate the

---

[3] Indeed, publicly available court documents reflect that between 2001 and 2025, Fava was charged with felony and/or misdemeanor crimes in 26 separate cases, 19 of which involve counts of forgery, identity fraud, or stolen credit cards, and 13 of which she either submitted guilty pleas or was found guilty. Robinson Declaration (Ex. A) at ¶ 13.

[4] "[A] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (quotation omitted).

requisite personal characteristics and integrity necessary to fulfill the fiduciary role of a class representative in this specific litigation.

It is true that dismissal at this stage can be considered extreme, but the nature of Plaintiff's claims in light of the nature of her relevant guilty pleas *is also extreme*. The importance of Rule 23(c)(1)'s directive to rule on such issues as early as practicable warrants action now, and Plaintiff should not be granted leave to move forward with the Proposed Amended Class Action Complaint, and/or either complaint should nevertheless be dismissed based on all the foregoing.[5]

Dated: February 9, 2026

/s/ *Sarah A. Long*
SARAH A. LONG, ESQ.
Florida Bar No.: 0080543
MCDONALD TOOLE RICHMAN & CORRENTI, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL  32801
Telephone: (407) 246-1800
Facsimile: (407) 246-1895

Paulyne Gardner
Admitted Pro Hac Vice
**MULLEN COUGHLIN LLC**
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
Telephone: (267) 930-2098
pgardner@mullen.law

*Attorneys for Defendant Giggle, LLC d/b/a Giggle Finance*

---

[5] In the alternative, Defendant seeks to strike Paragraph 37(d) from the Proposed Amended Complaint (or Paragraph 24(4) of the original Complaint, both claiming that Plaintiff is an adequate class representative). The Federal Rules of Civil Procedure provide that "the court may order stricken from any pleading ... any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Plaintiff's allegation in light of her guilty pleas renders it impertinent and scandalous as applied. Although Defendant understands there is disagreement among courts as to whether such issues are more appropriately resolved at class certification, allowing this unique matter to proceed to that juncture notwithstanding the foregoing would prejudice Defendant.

## CERTIFICATE OF SERVICE

      I hereby certify that on February 9, 2026, a true and correct copy of the foregoing document was filed electronically via the Court's CM/ECF system, which caused a copy to be served on all counsel of record.

Dated: February 9, 2026

By: */s/ Sarah A. Long*
     Sarah A. Long