# EXHIBIT A

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

CHRISTINA FAVA, individually and on behalf
of all others similarly situated,

                Plaintiff,                Case No. 1:25-cv-25494

    v.

GIGGLE LLC, D/B/A GIGGLE FINANCE
           Defendant.

## DECLARATION OF RACHEL ROBINSON

I, Rachel Robinson, declare under penalty of perjury, as provided for by 28 U.S.C. § 1746, that the following statements are true:

1.     I am over eighteen years of age and am competent to make this affidavit. Unless otherwise stated herein, all of the statements contained in this declaration are based upon my personal knowledge, experience, and research.

2.     I am currently Managing Director and Head of Research for Prescient, an investigations firm. I am an investigator with more than 13 years of experience, including four years of experience in investigations involving compromised credentials and other deep and dark web sources. During this time, I have conducted and led hundreds of public records and open-source investigations on behalf of law firms, corporations, financial institutions, and government agencies.

3.     I have been employed as an investigator by Prescient since 2021. As Head of Research, a title I have held since 2024, I am responsible for research standards and education at Prescient. At Prescient, I lead complex investigations involving both traditional public records (such as court and property records) and online open-source intelligence.

4.      From 2016 to 2021, I was employed as an investigator by Berkeley Research Group, in its Global Investigations + Strategic Intelligence practice, where I held the title of Managing Consultant. Prior to this, from 2012 to 2016, I was employed by investigations firm Kroll Associates and held the title of Associate Director.

5.      My CV is included as **Exhibit 1** of this declaration.

6.      I understand that the Plaintiff Christina Fava ("Fava") in this litigation, styled Fa*va v. Giggle LLC*, 1:25-cv-25494, (S.D. Fla.), alleges that Giggle Finance's negligence allowed her personally identifiable information ("PII") to be breached in November 2024 and that the release of this PII puts her at risk for identity fraud.

7.      I have been retained by Giggle Finance in this litigation to conduct a review of Plaintiff's background and the presence of her PII available on the deep and dark web.  My billing rate for this matter is $400 per hour. My compensation is in no way dependent on any outcome in this matter.

8.      My research in this matter encompassed two workstreams: (1) an assessment of the presence of Fava's PII available on the deep and dark web, and (2) a review of Fava's background for indications of credibility issues.

9.      First, to identify any exposure, sale, or sharing of Fava's sensitive PII on the deep and dark web, Prescient searched for Fava's identifiers in repositories of deep and dark web data, the sources for which include:

    a.  Dark web marketplaces and automated vending carts: Underground e-commerce websites used for selling or trading illegal goods, including malware, cyber-attack tools, access to compromised networks, and PII.

    b.  Hacker communities: Forums, message boards, and other group websites where threat actors discuss malicious intentions and/or trade in leaked/stolen digital assets and PII, and TTPs.

c. Paste sites: Websites that are often used by hackers to publish leaked credentials, excerpts of stolen data, and other compromised data from corporate networks. Includes "dox" sites.

d. Leaked credential repository: Our constantly growing in-house repository includes tens of billions of credentials and other records with PII identified in all corners of the deep and dark web.

e. Messaging platforms: Messages and images posted to tens of thousands of open and invite-only groups on platforms like Telegram, Discord, IRC, ICQ, and QQ.

10.     Prescient conducted searches within its in-house repository of tens of billions of compromised records and identified 76 records associated with Fava in 50 unique databases dating back to 2010 and unrelated to the 2024 Giggle Finance breach.

11.     Fava's compromised PII identified in these records includes her full name, date of birth, Social Security number ("SSN"), phone numbers, IP addresses, physical addresses, email addresses, usernames, user IDs, financial and demographic information, as well as hashed and plaintext passwords. Although the majority of these findings only contained her name, address, phone number, email, or IP address, extensive PII for Fava appear in compromised records from three separate data breaches, which predate the 2024 Giggle Finance breach:

a. In 2021, Fava's name, address, phone number, and email address were released in part of the AT&T data breach.

b. In 2023, Fava's credit card information relating to two different Visa credit cards was released in part of the Eye4Fraud data breach.

c. In 2024, Fava's SSN was released after the April 2024 National Public Data breach.

12.     Additionally, Fava has claimed to have been impacted by the February and May 2024 Evolve Bank data breaches, which she pursued in litigation as a named plaintiff in the case styled *In Re Evolve Bank & Trust Customer Data Security Breach Litig.*, MDL No. 2:24-md-03127-SHL-cgc, filed in the United States District Court for the Western District of Tennessee, which approved a class-wide settlement in December 2025.

13.     For the second part of this assessment, Prescient searched federal court indices nationwide for proceedings naming Fava as a party, as well as state district, justice, and municipal court indices in Clark County, Nevada, where she is known to have lived for at least the past twenty years.  Prescient identified approximately six people in the United States with the name "Christina Fava" after research of commercial databases that aggregate identity information. However, although they share a first and last name with the subject of this investigation, none share a middle initial or birth year with her, and no other "Christina Fava" has been associated with addresses in Nevada, making the likelihood of our research erroneously identifying court records that represent false positives for Fava unlikely.

14.     Relevant to this case, between 2001 and 2025, Fava was charged with felony and/or misdemeanor crimes in 26 separate cases, 19 of which involve counts of forgery, identity fraud, or stolen credit cards, and 13 of which she either submitted guilty pleas or was found guilty.

15.     Most recently, Fava was charged in August 2025 in federal court with one count of possession of fifteen or more counterfeit or unauthorized access devices. *USA v. Christina Fava*, USDC for the District of Nevada, Case No. 2:25-cr-00261-RFBMDC-1. According to the criminal information filing Fava "did knowingly and with intent to defraud, possess at least fifteen unauthorized access devices, that is credit cards and debit cards [she] had fraudulently obtaining using victims' Personal Identifiable Information (PII)." This public court document is attached hereto as **Exhibit 2**.  On October 2, 2025, Fava signed a waiver of indictment and entered a guilty plea agreement. Her plea agreement offers more specificity into Fava's alleged criminal activity, all of which centers on her misuse of compromised PII to open lines of credit. This public court document is attached hereto as **Exhibit 3**, and details how Fava received a large amount of compromised PII—including names, addresses, dates of birth, SSNs, bank account information,

and credit card information—which she used to create fraudulent identification documents including counterfeit social security cards, as well as to open bank accounts and apply for lines of credit in the victims' identities, gaining access to over $78,000 in fraudulent lines of credit.

16.     Similarly, in September 2021, Fava was charged in Las Vegas Justice Court with two counts of felony buying/possessing/receiving stolen property and two counts of possessing documents or personal identifying information to establish a false status or identity; Fava pleaded *nolo contendere* to the two stolen property charges and was found guilty. *State of Nevada v. Fava, Christina Lynn*, Las Vegas Justice Court, Case No. 21-CR-022589-001.

I declare under penalty of perjury that the above statements are true and correct. Executed on this 9th day of February, 2026.

Rachel Robinson
Managing Director and Head of Research, Prescient

# EXHIBIT 1



**CURRICULUM VITAE**


**RACHEL ROBINSON**


Direct: 312.513.5085
rrobinson@prescient.com


## SUMMARY

Rachel Robinson is Managing Director and Head of Research for Prescient. Rachel is a public records and open-source data expert, and she leads research standards and education at Prescient. Her work focuses on complex investigations and rapid research in support of security assessments and litigation, as well as other client-specific needs.

Rachel's investigative work has included asset searches for corporate and individual subjects, online and physical threat attribution and investigation assignments, and dozens of due diligence investigations for some of the largest commercial banks and private equity funds in the United States, as well as probity investigations for three state lottery systems. She has also performed investigatory work in support of federal and special prosecutors, background investigations of candidates for a high-profile government position, and analysis into the accuracy, completeness, and reliability of commercial databases of public records.

Rachel's work has uncovered undisclosed business interests, misstatements in education credentials and work achievements, histories of unprofitable business decisions, regulatory proceedings against subject companies and individuals, and connections to convicted members of organized crime. Her work has also revealed fraudulent business claims of a purported investor, and a pattern of mischaracterizations from an opposing expert witness who had previously been sanctioned by the court.

Supporting a client's court appeal to overturn a billion-dollar judgment, Rachel identified an existing relationship between the two sides' expert witnesses whose character was more adversarial than disclosed, as well as a history of fraud for the opposing side's witness. Rachel also discovered a dissident director nominee's part in another investment's involuntary bankruptcy proceedings (which he failed to disclose, violating Canadian securities legislation). Rachel discovered key witnesses in court documents and social media sources that were crucial to prove an adverse party's claims were unsupportable. Previous investigations resulted in identifying a family relationship between a manager and a vendor, and found an opposing witness had recently been terminated from his job as a physician.

In a public records-based due diligence or background investigation, Rachel searches, analyzes and summarizes records to outline the history of an individual or person. The focus



of these investigations is typically on relevant litigation, performance, media coverage and any interaction with regulatory agencies. Public records may be searched online or onsite, and include court records, government documents and data (such as licensing, campaign finance reports, regulatory agency decisions and records) and archived media reports.

Rachel also uses advanced search techniques and industry-specific tools to search for information on the surface web and deep/dark web sources. She has uncovered hidden social media profiles, deleted webpages, and derogatory statements made by subjects adverse to her clients.

**EDUCATION**

B.A.    University of Wisconsin – Milwaukee, 2005

**PRESENT EMPLOYMENT**

Managing Director and Head of Research, Prescient

**PREVIOUS POSITIONS**

Managing Consultant, Global Investigations + Strategic Intelligence, Berkeley Research Group, LLC (2016 – 2021)

Associate Director, Kroll Associates, Inc. (2012 – 2016)

**LICENSING**

Illinois Licensed Private Detective, 115002693

# EXHIBIT 2



1   SUE FAHAMI
    Executive Assistant
2   District of Nevada
    Nevada Bar No. 5634KIMBERLY M. FRAYN
3   Assistant United States Attorney
    501 Las Vegas Boulevard South, Suite 1100
4   Las Vegas, Nevada 89101
    Tel: (702) 388-6336
5   Fax: (702) 388-6418
    Kimberly.Frayn@usdoj.gov
6
    *Attorneys for the United States*
7
                    **UNITED STATES DISTRICT COURT**
8                      **DISTRICT OF NEVADA**
9
    UNITED STATES OF AMERICA,          Case No.: 2:25-cr- 2̲6̲1̲ ̲R̲F̲B̲
10
                    Plaintiff,          CRIMINAL INFORMATION
11
              vs.                       VIOLATION:
12
    CHRISTINA FAVA,                     18 U.S.C. §§ 1029(a)(3), (c)(1)(A)(i) –
13                                      Possession of 15 or More Counterfeit or
                    Defendant.          Unauthorized Access Devices.
14

15  THE UNITED STATES ATTORNEY FOR THE DISTRICT OF NEVADA CHARGES
16  THAT:
17                            COUNT ONE
18          Possession of 15 or More Counterfeit or Unauthorized Access Devices
                      (18 U.S.C. § 1029(a)(3), (c)(1)(A)(i))
19
           On or about August 30, 2022, in in the State and Federal District of Nevada and
20  elsewhere,
21                            CHRISTINA FAVA,
22  defendant herein, did knowingly and with intent to defraud, possess at least fifteen
23  unauthorized access devices, that is credit cards and debit cards the defendant had
24

1  fraudulently obtained using victims' Personal Identifiable Information (PII), said possession

2  in and affecting interstate commerce, in that the defendant caused the unauthorized access

3  devices to be mailed from other states in the United States to the defendant in the State of

4  Nevada, all in violation of 18 U.S.C. § 1029(a)(3), (c)(1)(A)(i).

5  **DATED:** this 2nd day of September, 2025.

6                                   Sue Fahami
                                       Executive Assistant

7

8

9                                   /s/ *Kimberly M. Frayn*
                                   KIMBERLY M. FRAYN
                                   Assistant United States Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT 3

1  SUE FAHAMI
   Executive Assistant
2  District of Nevada
   Nevada Bar No. 5634
3  KIMBERLY M. FRAYN
   Assistant United States Attorney
4  501 Las Vegas Boulevard South, Suite 1100
   Las Vegas, Nevada 89101
5  Tel: (702) 388-6336
   Kimberly.Frayn@usdoj.gov
6  *Attorneys for the United States*



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

7

8  UNITED STATES OF AMERICA,

9         Plaintiff,

10               v.

11  CHRISTINA FAVA,

12         Defendant.

13

No. 2:25-CR- ꝈꝈ / - Ꝉ FB

**Plea Agreement for Defendant**
**Christina Fava Pursuant to**
**Fed. R. Crim. P. 11(c)(1)(A) and (B)**

14      This plea agreement between Christina Fava ("defendant") and the United States

15  Attorney's Office for the District of Nevada (the "USAO") sets forth the parties' agreement

16  regarding the criminal charges referenced herein and the applicable sentence and fine in the

17  above-captioned case. This agreement binds only defendant and the USAO and does not bind

18  the district court, the U.S. Probation Office, or any other federal, state, local, or foreign

19  prosecuting, enforcement, administrative, or regulatory authorities. This agreement does not

20  prohibit the USAO or any agency or third party from seeking any other civil or administrative

21  remedies, including administrative forfeiture or civil forfeiture *in rem* actions*, directly or

22  indirectly against defendant or defendant's property.

23      This agreement becomes effective upon signature by defendant, defendant's counsel, and

24  an Assistant United States Attorney.

1   SUE FAHAMI
    Executive Assistant
2   District of Nevada
    Nevada Bar No. 5634
3   KIMBERLY M. FRAYN
    Assistant United States Attorney
4   501 Las Vegas Boulevard South, Suite 1100
    Las Vegas, Nevada 89101
5   Tel: (702) 388-6336
    Kimberly.Frayn@usdoj.gov
6   *Attorneys for the United States*

                    **UNITED STATES DISTRICT COURT**
7                   **FOR THE DISTRICT OF NEVADA**

8   UNITED STATES OF AMERICA,            No. 2:25-CR-

9              Plaintiff,

10             v.                        **Plea Agreement for Defendant**
                                         **Christina Fava Pursuant to**
11  CHRISTINA FAVA,                      **Fed. R. Crim. P. 11(c)(1)(A) and (B)**

12             Defendant.

13

14          This plea agreement between Christina Fava ("defendant") and the United States

15  Attorney's Office for the District of Nevada (the "USAO") sets forth the parties' agreement

16  regarding the criminal charges referenced herein and the applicable sentence and fine in the

17  above-captioned case. This agreement binds only defendant and the USAO and does not bind

18  the district court, the U.S. Probation Office, or any other federal, state, local, or foreign

19  prosecuting, enforcement, administrative, or regulatory authorities. This agreement does not

20  prohibit the USAO or any agency or third party from seeking any other civil or administrative

21  remedies, including administrative forfeiture or civil forfeiture *in rem* actions, directly or

22  indirectly against defendant or defendant's property.

23          This agreement becomes effective upon signature by defendant, defendant's counsel, and

24  an Assistant United States Attorney.

# I. DEFENDANT'S OBLIGATIONS

1.     Defendant agrees to:

     a.     Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a one count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Possession of 15 or More Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(3);

     b.     Stipulate to the facts agreed to in this agreement;

     c.     Abide by all agreements regarding sentencing contained in this agreement;

     d.     Not seek to withdraw defendant's guilty plea once it is entered;

     e.     Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter;

     f.     Not commit any federal, state, or local crime;

     g.     Be truthful at all times with the U.S. Probation and Pretrial Services Offices and the Court;

     h.     Before and after sentencing, upon request by the Court, the USAO, or the Probation Office, provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning defendant's assets and defendant's ability to pay. As part of the required disclosure, defendant agrees to provide any and all financial information and authorizations requested by the Probation Office for preparation of the Presentence Report. Defendant further agrees that, upon filing of this agreement, the USAO is authorized to obtain defendant's credit report. Defendant will also complete a financial form provided by the USAO, to include all supporting documentation, and return it to the USAO within ten (10) days from entry of the plea. Defendant agrees that the district court may enter

2

1   any order necessary to effectuate or facilitate disclosure of defendant's financial information.

2                   i.        To facilitate payment of any fine, restitution, or assessment, surrender

3   assets defendant obtained directly or indirectly as a result of defendant's crimes. Defendant

4   agrees to voluntarily release funds and property under defendant's control or in which defendant

5   has any property interest, before and after sentencing, to pay any fine or restitution identified in

6   this agreement, agreed to by the parties, or ordered by the Court.

7                   j.        Agree to and not oppose the imposition of the following special conditions

8   of probation or supervised release:

9                   i.        You must not use or possess any controlled substances without a

10  valid prescription. If you do have a valid prescription, you must disclose the prescription

11  information to the probation officer and follow the instructions on the prescription;

12                  ii.       You must submit to drug testing as directed by the court or the

13  probation officer;

14                  iii.      You must participate in an outpatient substance abuse treatment

15  program and follow the rules and regulations of that program. The probation officer will

16  supervise your participation in the program. You must pay the costs of the program;

17                  iv.      You must work full time (at least 30 hours per week) at a lawful type

18  of employment, unless the probation officer excuses you from doing so. If you do not have full-

19  time employment you must try to find full-time employment, unless the probation officer

20  excuses you from doing so. If you plan to change where you work or anything about your work

21  (such as your position or your job responsibilities), you must notify the probation officer at least

22  10 days before the change. If notifying the probation officer at least 10 days in advance is not

23  possible due to unanticipated circumstances, you must notify the probation officer within 72

24  hours of becoming aware of a change or expected change; and

1             v.      You must not incur new credit charges or open additional lines of

2 credit without the approval of the probation officer.

### II. THE USAO'S OBLIGATIONS

4      2.      The USAO agrees to:

5          a.      Stipulate to facts agreed to in this agreement;

6          b.      Abide by all agreements regarding sentencing contained in this agreement;

7          c.      At sentencing, provided that defendant demonstrates an acceptance of

8 responsibility for the offense up to and including the time of sentencing, recommend a two-level

9 reduction in the applicable sentencing guidelines offense level, pursuant to USSG § 3E1.1 and

10 move for an additional one-level reduction if available under that section; and

11          d.      Not bring any additional charges against defendant arising out of the

12 investigation in the District of Nevada which culminated in this agreement and based on

13 conduct known to the USAO. However, the USAO reserves the right to prosecute defendant for

14 (a) any crime of violence as defined by 18 U.S.C. § 16; and (b) any criminal tax violations

15 (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371). Defendant

16 agrees that the district court at sentencing may consider any uncharged conduct in determining

17 the applicable sentencing guidelines range, the propriety and extent of any departure from that

18 range, and the sentence to be imposed after consideration of the sentencing guidelines and all

19 other relevant factors under 18 U.S.C. § 3553(a).

### III. ELEMENTS OF THE OFFENSE

21      3.      Count One: The elements of Possession of 15 or More Counterfeit or

22 Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(3) are as follows:

23      First:      The defendant knowingly possessed at least 15 access devices at the same

24                     time;

| Second: | The defendant knew that the devices were counterfeit or unauthorized; |
|---|---|
| Third: | The defendant acted with the intent to defraud; and |
| Fourth: | The defendant's conduct affected commerce between one state and another state or between a state of the United States and a foreign country. |

*See* Ninth Circuit Model Criminal Jury Instruction 15.12 (revised Mar. 2022

## IV. CONSEQUENCES OF CONVICTION

4.    Maximum Statutory Penalties: Defendant understands that the statutory maximum sentence the district court can impose for a violation of 18 U.S.C. § 1029(a)(3) as charged in Count One is: 10 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

5.    Parole Abolished: Defendant acknowledges that defendant's prison sentence cannot be shortened by early release on parole because parole has been abolished.

6.    Supervised Release: Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.    Factors under 18 U.S.C. § 3553: Defendant understands that the district court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining defendant's sentence. However, the statutory maximum sentence limits the district court's discretion in determining defendant's sentence.

8.     <u>Potential Collateral Consequences of Conviction</u>: Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the district court accepts defendant's guilty pleas, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.     <u>Potential Removal/Deportation Consequences of Conviction</u>: Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The district court cannot advise defendant fully regarding the immigration consequences of the felony conviction in this case, but defendant's attorney has advised him about the deportation risks of his guilty plea. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

**V. FACTUAL BASIS**

10.    Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant acknowledges that if defendant elected to go to trial instead of pleading guilty, the USAO could prove defendant's guilt beyond a reasonable doubt. Defendant further acknowledges that defendant's admissions and declarations of fact set forth below satisfy every element of the charged offenses. Defendant waives any potential future

1  claim that the facts defendant admitted below are insufficient to satisfy the elements of the

2  charged offense. Defendant admits and declares under penalty of perjury that the facts set forth

3  below are true and correct:

4          a.     Beginning on a date unknown and continuing until August 30, 2022, the

5  defendant engaged in fraudulent activities as directed by Coconspirators 1 and 2. The defendant

6  was given a large amount of compromised Personal Identifiable Information (PII) (i.e. name,

7  address, date of birth, social security number, bank account information and credit card

8  numbers) by Coconspirator 2.

9          b.     Using this PII, the defendant created fraudulent identification documents,

10  such as Nevada and California drivers' licenses, and counterfeit social security cards. The

11  defendant used the counterfeit drivers' licenses and counterfeit social security cards to apply for

12  lines of credit through the major creditors and retail stores, as well as to open bank accounts and

13  online postal mailboxes, all of which was done in the victims' identities with their PII. The

14  defendant made a folder for each victim and stored the counterfeit drivers' licenses, counterfeit

15  social security card, rechargeable debit cards, credit reports, bank account documents, postal

16  mailbox rental agreements, and unauthorized credit cards that she had obtained in the victim's

17  name in that folder, creating identity packets. The defendant knew and intended that these

18  identity packets would be used by Coconspirator 2 and other coconspirators to fraudulently

19  obtain money and other things of value.

20          c.     In July of 2022, the defendant visited an online advertising platform that

21  was being operated by undercover law enforcement officers. The defendant attempted to

22  purchase equipment that she intended to use to make counterfeit identification documents and

23  counterfeit access devices, such as counterfeit credit cards and debit cards.

24

d.      On or about August 30, 2022, Homeland Security Investigations (HSI) Special Agents and HSI taskforce officers executed a warrant authorizing them to search the defendant's residence in Las Vegas, Nevada. At that time, the defendant was found to be in possession of a large quantity of victims' identity packets, including more than 15 unauthorized access devices, that is the credit and debit cards the defendant had obtained using the victims' PII. The defendant caused the unauthorized credit and debit cards to be mailed to her in and effecting interstate commerce, that is from other states in the United States to the defendant in Nevada. As a result, the defendant gained access to more than $78,000 in lines of credit she had opened in victims' identities, which she and other coconspirators intended to use to fraudulently obtain money and other things of value for their own financial gain.

## VI. SENTENCING FACTORS

11.      <u>Discretionary Nature of Sentencing Guidelines</u>: Defendant understands that in determining defendant's sentence, the district court is required to calculate the applicable sentencing guidelines range and to consider that range, possible departures under the sentencing guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the sentencing guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated sentencing guidelines range, and that after considering the sentencing guidelines and the other § 3553(a) factors, the district court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.      <u>Offense Level Calculations</u>: The parties jointly agree and stipulate that, in calculating defendant's advisory guidelines sentencing range, the Court should use the following base offense level and adjustments; acknowledge that these stipulations do not bind the district court; and agree that they will not seek to apply or advocate for the use of any other base offense

level or any other specific offense characteristics, enhancements, or reductions in calculating the advisory guidelines range except as expressly noted in the following paragraphs:

Base Offense Level [USSG § 2B1.1(a)(2)]: 6

Gain to the Defendant more than $40,000 [USSG § 2B1.1(b)(1)(D)]: +6

More than 10 victims [USSG § 2B1.1(b)(2)(A)(i)]: +2

<u>Means of Id to Obtain Other Means of Id [USSG § 2B1.1(b)(11)(c)(i)]:</u> +2

Adjusted Offense Level: 16

13.     <u>Reduction for Acceptance of Responsibility</u>: Under USSG § 3E1.1(a), the USAO will recommend that defendant receive a two-level downward adjustment for acceptance of responsibility unless defendant (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when defendant enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when defendant enters the guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when defendant enters the guilty plea; (d) provides false or misleading information to the USAO, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding defendant's involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw defendant's guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

Under USSG § 3E1.1(b), if the district court determines that defendant's total offense level before operation of § 3E1.1(a) is 16 or higher, and if the USAO recommends a two-level downward adjustment pursuant to the preceding paragraph, the USAO will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because defendant communicated defendant's decision to plead guilty in a timely manner that enabled the USAO to avoid preparing for trial and to efficiently allocate its resources.

14.     <u>Criminal History Category</u>: Defendant acknowledges that the district court may base defendant's sentence in part on defendant's criminal record or criminal history. The district court will determine defendant's criminal history category under the sentencing guidelines.

15.     <u>Additional Sentencing Information</u>: The stipulated sentencing guidelines calculations are based on information now known to the parties. Defendant understands that both defendant and the USAO are free to (a) supplement the facts in this agreement by supplying relevant information to the U.S. Probation and Pretrial Services Offices and the district court regarding the nature, scope, and extent of defendant's criminal conduct and any aggravating or mitigating facts or circumstances; and (b) correct any and all factual misstatements relating to the district court's sentencing guidelines calculations and determination of sentence. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the U.S. Probation and Pretrial Services Offices and the district court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for defendant to withdraw defendant's guilty plea.

Defendant acknowledges that the U.S. Probation Office may calculate the sentencing guidelines differently and may rely on additional information it obtains through its investigation. Defendant also acknowledges that the district court may rely on this and other additional information as it calculates the sentencing guidelines range and makes other sentencing determinations, and the district court's reliance on such information shall not be grounds for defendant to withdraw defendant's guilty plea.

1

# VII. POSITIONS REGARDING SENTENCING

2    16.    The parties will jointly recommend that the district court grant a three-level

3    downward variance under 18 U.S.C. § 3553(a) based on the unique facts and circumstances

4    related to this defendant. The government will recommend a sentence at the low-end of the

5    post-variance guideline range and will further recommend that half of the low-end sentence be

6    served in custody, and the other half be served in home confinement as a condition of

7    supervised release pursuant to U.S.S.G. § 5C1.1(c)(2), (d)(2). The defendant can argue for an

8    additional downward variance under 18 U.S.C. § 3553(a) but will not argue for a sentence of

9    less than five years of supervised probation. If the Court sentences the defendant to a custodial

10   term, the parties will jointly recommend that the Court impose a three-year term of supervised

11   release. Defendant will not, either explicitly or implicitly, argue for any other downward

12   departure or variance from defendant's offense level or criminal history category.

13   17.    Defendant acknowledges that the district court does not have to follow the

14   recommendation of either party.

15   18.    Notwithstanding its agreement to recommend a sentence as described above, the

16   USAO reserves its right to defend any lawfully imposed sentence on appeal or in any post-

17   conviction litigation.

18   19.    If defendant commits any act that results in the Court finding that defendant is

19   not entitled to a downward adjustment for acceptance of responsibility, the USAO is entitled to

20   argue for any sentence it deems appropriate under 18 U.S.C. § 3553(a).  In any such event,

21   Defendant remains bound by the provisions of this agreement and shall not have the right to

22   withdraw defendant's guilty plea.

23

24

## VIII. WAIVER OF CONSTITUTIONAL RIGHTS

20.     Defendant understands that by pleading guilty, defendant gives up the following rights:

a.     The right to persist in a plea of not guilty;

b.     The right to a speedy and public trial by jury;

c.     The right to be represented by counsel—and if necessary have the court appoint counsel—at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel—and if necessary have the court appoint counsel—at every other stage of the proceeding;

d.     The right to be presumed innocent and to have the burden of proof placed on the USAO to prove defendant guilty beyond a reasonable doubt;

e.     The right to confront and cross-examine witnesses against defendant;

f.     The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify;

g.     The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant; and

h.     The right to pursue any affirmative defenses; Fourth Amendment or Fifth Amendment claims; any other pretrial motions that have been or could have been filed; and challenges to any adverse pre-trial rulings (unless specifically reserved in the following section).

## IX. WAIVER OF APPELLATE RIGHTS

21.     <u>Waiver of Appellate Rights</u>: Defendant knowingly and expressly waives the right to appeal: (a) any sentence imposed within or below the applicable Sentencing Guideline range as determined by the district court; (b) the manner in which the district court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; (c) any other aspect of the conviction,

12

1   including but not limited to the constitutionality of the statutes of conviction; and (d) any other

2   aspect of the sentence, including but not limited to the constitutionality of any mandatory or

3   standard conditions of supervised release; the denial of any motion for early termination of

4   supervised release; and any order of restitution or forfeiture.

5         22.    Defendant reserves only the right to appeal any portion of the sentence that is an

6   upward departure or variance from the applicable Sentencing Guideline range as determined by

7   the district court.

8         23.    <u>Waiver of Post-Conviction Rights</u>: Defendant also knowingly and expressly

9   waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to defendant's

10   conviction, sentence, and the procedure by which the district court adjudicated guilt and

11   imposed sentence, except non-waivable claims of ineffective assistance of counsel.

12         24.    <u>Preservation of Evidence</u>: Defendant acknowledges that the USAO and the

13   agencies investigating this case are not obligated or required to preserve any evidence obtained in

14   the investigation of this case.

15

16            **X. RESULT OF WITHDRAWAL OF GUILTY PLEA**
            **OR VACATUR/REVERSAL/SET-ASIDE OF CONVICTION**

17         25.    <u>Consequence of Withdrawal of Guilty Plea</u>: Defendant agrees that if, after

18   entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in

19   withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into

20   this agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under

21   this agreement and (b) should the USAO choose to pursue any charge that was either dismissed

22   or not filed as a result of this agreement, or that the government agreed to move to dismiss at

23   sentencing as part of this agreement, then (i) any applicable statute of limitations will be tolled

24   between the date of defendant's signing of this agreement and the filing commencing any such

1  action; and (ii) defendant waives and gives up all defenses based on the statute of limitations,

2  any claim of pre-indictment delay, or any speedy trial claim with respect to any such action,

3  except to the extent that such defenses existed as of the date of defendant's signing this

4  agreement.

5      26.      Consequence of Vacatur, Reversal, or Set-aside: Defendant agrees that if

6  defendant's conviction is vacated, reversed, or set aside, both the USAO and defendant will be

7  released from all their obligations under this agreement, except that, should the USAO choose to

8  pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any

9  applicable statute of limitations will be tolled between the date of defendant's signing of this

10 agreement and the filing commencing any such action; and (ii) defendant waives and gives up all

11 defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy

12 trial claim with respect to any such action, except to the extent that such defenses existed as of

13 the date of defendant's signing this agreement.

14                          **XI. BREACH OF AGREEMENT**

15     27.      Defendant agrees that if, at any time after this agreement becomes effective,

16 defendant knowingly violates or fails to perform any of defendant's obligations under this

17 agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's

18 obligations are material, a single breach of this agreement is sufficient for the USAO to declare a

19 breach, and defendant shall not be deemed to have cured a breach without the express agreement

20 of the USAO in writing. If the USAO declares this agreement breached, and the district court

21 finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea

22 pursuant to this agreement, defendant will remain bound by the provisions of this agreement and

23 will not be able to withdraw the guilty plea; and (b) the USAO will be relieved of all its

24 obligations under this agreement.

28.     Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, or that the government agreed to move to dismiss at sentencing as part of this agreement, then:

    a.     Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b.     Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

    c.     Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Federal Rule of Evidence 410, Federal Rule of Criminal Procedure 11(f), or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## XII. COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

29.     Defendant understands that the Court and the U.S. Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.     Defendant understands that both defendant and the USAO are free to argue on appeal and collateral review that the district court's sentencing guidelines calculations and the sentence it chooses to impose are not error.

31.     Defendant understands that even if the district court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to by the parties, or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one—not the prosecutor, defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## XIII. ADDITIONAL ACKNOWLEDGMENTS

32.     Defendant acknowledges that:

a.      Defendant read this agreement and defendant understands its terms and conditions.

b.      Defendant had adequate time to discuss this case, the evidence, and this agreement with defendant's attorney.

c.      Defendant carefully and thoroughly discussed all terms of this agreement with defendant's attorney.

d.      Defendant understands the terms of this agreement and voluntarily agrees to those terms.

e.      Defendant has discussed with defendant's attorney the following: the evidence; defendant's rights; possible pretrial motions that might be filed; possible defenses that

1 might be asserted either prior to or at trial; the sentencing factors set forth in 18 U.S.C. § 3553(a);

2 the relevant sentencing guidelines provisions; and consequences of entering into this agreement.

3         f.      The representations contained in this agreement are true and correct,

4 including the factual basis for defendant's offense set forth in this agreement.

5         g.      Defendant was not under the influence of any alcohol, drug, or medicine

6 that would impair defendant's ability to understand the agreement when defendant considered

7 signing this agreement and when defendant signed it.

8      33.      Defendant understands that defendant alone decides whether to plead guilty or go

9 to trial, and acknowledges that defendant has decided to enter defendant's guilty plea knowing of

10 the charges brought against defendant, defendant's possible defenses, and the benefits and

11 possible detriments of proceeding to trial.

12      34.      Defendant understands that no promises, understandings, or agreements other

13 than those set forth in this agreement have been made or implied by defendant, defendant's

14 attorney, or the USAO, and no additional promises, agreements, or conditions shall have any

15 force or effect unless set forth in writing and signed by all parties or confirmed on the record

16 before the district court.

17      35.      Defendant acknowledges that defendant decided to plead guilty voluntarily and

18 that no one threatened, coerced, or forced defendant to enter into this agreement.

19      36.      Defendant is satisfied with the representation of defendant's attorney, and

20 defendant is pleading guilty because defendant is guilty of the charges and chooses to take

21 advantage of the promises set forth in this agreement and for no other reason.

22 / / /

23 / / /

24 / / /

# XIV. PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

37. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF NEVADA

SUE FAHAMI
Executive Assistant

_____        10/2/2025
KIMBERLY M. FRAYN                       Date
Assistant United States Attorney


_____        10/2/25
CHRISTINA FAVA                          Date
Defendant


_____        10/2/25
CHRIS RASMUSSEN, ESQ.                   Date
Attorney for Defendant Fava

1

<u>**EXHIBIT A**</u>
**Form of One-Count Information**
2 **Charging Defendant Fava**

3 THE UNITED STATES ATTORNEY CHARGES THAT:

4 <u>COUNT ONE</u>
Possession of 15 or More Counterfeit or Unauthorized Access Devices
5 (18 U.S.C. § 1029(a)(3), (c)(1)(A)(i))

6 On or about August 30, 2022, in in the State and Federal District of Nevada and

7 elsewhere,

8 CHRISTINA FAVA,

9 defendant herein, did knowingly and with intent to defraud, possess at least fifteen unauthorized

10 access devices, that is credit cards and debit cards the defendant had fraudulently obtained using

11 victims' Personal Identifiable Information (PII), said possession in and affecting interstate

12 commerce, in that the defendant caused the unauthorized access devices to be mailed from other

13 states in the United States to the defendant in the State of Nevada, all in violation of 18 U.S.C.

14 § 1029(a)(3), (c)(1)(A)(i).

15

16

17

18

19

20

21

22

23

24