**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

CHRISTINA FAVA, individually and on behalf
of all others similarly situated,

     Plaintiff,       Case No. 1:25-cv-25494

  v.

GIGGLE LLC, D/B/A GIGGLE FINANCE
       Defendant.

**DEFENDANT GIGGLE LLC D/B/A GIGGLE FINANCE'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION**
**COMPLAINT AND MEORANDUM OF LAW IN SUPPORT**

Defendant Giggle, LLC d/b/a Giggle Finance ("Giggle"), by and through undersigned counsel, hereby moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's First Amended Class Action Complaint. Plaintiff's Complaint fails to state any claim upon which relief can be granted. Accordingly, Giggle, LLC d/b/a Giggle Finance ("Giggle"), by and through undersigned counsel, respectfully requests this Court to dismiss with prejudice Plaintiff's First Amended Class Action Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................................. 1

II.    FACTUAL ALLEGATIONS ................................................................................................ 1

III.   LEGAL STANDARD............................................................................................................ 2

IV.    ARGUMENT ........................................................................................................................ 3

       A.  Plaintiff Fails to State a Claim for Negligence. ............................................................ 3

       B.  Plaintiff Fails to State a Claim for Breach of Implied Contract. ............................... 11

       C.  Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and
           Fair Dealing. ............................................................................................................... 13

V.     CONCLUSION................................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allgood v. Paperless Pay Corporation,*
No. 3:20-cv-516-MMH-MCR, 2022 WL 846070 (M.D. Fla. March 22, 2022) ..................... 8, 9

*Am. Dental Ass'n v. Cigna Corp.,*
605 F.3d 1283 (11th Cir. 2010) ..................................................................................... 2

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................................... 3

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .............................................................................................. 2, 3, 5

*Bromer v. Florida Power & Light Co.,*
45 So. 2d 658 (Fla. 1950) ............................................................................................ 11

*Centurion Air Cargo, Inc. v. United Parcel Serv. Co.,*
420 F.3d 1146 (11th Cir. 2005) ............................................................................... 13, 14

*Conner, et al. v. CPAP Medical Supplies and Services Inc.,*
No. 3:25-CV-945-WWB-LLL, 2026 WL 1506098 (M.D. Fla. May 29, 2026) .................*Passim*

*Cravens v. Garda CL Se., Inc.,*
No. 24-CV-80400-RLR, 2024 WL 5058304 (S.D. Fla. Dec. 9, 2024) ...................................... 4

*Crowe v. Managed Care of N. Am. Inc.,* No.,
23-61065-CIV, 2024 WL 6863341 (S.D. Fla. Aug. 16, 2024)................................................ 6, 7

*Delgado v. Laundromax, Inc.,*
65 So.3d 1087 (Fla. Dist. Ct. App. 2011) ..................................................................... 3

*Desue v. 20/20 Eye Care Network, Inc.,*
No. 21-civ-61275-RAR, 2022 WL 796367 (S.D. Fla. Mar. 15, 2022) ..................................... 4

*Glover v. Liggett Grp., Inc.,*
459 F.3d 1304 (11th Cir. 2006) ..................................................................................... 2

*Grieco v. Daiho Sangyo, Inc.,*
344 So. 3d 11 (Fla. 4th DCA 2022)................................................................................. 7

*In re Brinker Data Incident Litig.,*
No. 3:18-CV-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ............................... 5

*In re Mednax Service, Inc.*,
 603 F. Supp. 3d 1183 (S.D. Fla. 2022) .......................................................................... 3, 4, 12, 13

*Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*,
 992 F.2d 1171 (11th Cir. 1993) ............................................................................................... 2

*McNamara v. GEICO*,
 30 F.4th 1055 (11th Cir. 2022) ............................................................................................... 5

*Mink v. Smith & Nephew, Inc.*,
 860 F.3d 1319 (11th Cir. 2017) ............................................................................................. 11

*Resnick v. AvMed, Inc.*,
 693 F.3d 1317 (11th Cir. 2012) .........................................................................................*Passim*

*Rhythm & Hues, LLC v. Nature's Lawn Care, Inc.*,
 368 So. 3d 12 (Fla. Dist. Ct. App. 2023) ............................................................................... 11

*SBP Homes, LLC v. 84 Lumber Co.*,
 384 So. 3d 241 (Fla. Dist. Ct. App. 2024) ............................................................................. 11

*Sosa v. Coleman*,
 646 F.2d 991 (5th Cir. 1981) (applying Florida law) ............................................................... 7

*Vibe Micro, Inc. v. Shabanets*,
 878 F.3d 1291 (11th Cir. 2018) ............................................................................................... 3

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
 792 F.3d 1313 (11th Cir. 2015) ........................................................................................... 3, 4

## **Rules**

11th Circuit Rule 36–2 ............................................................................................................... 5

Federal Rule of Appellate Procedure 32.1 ................................................................................. 5

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 1, 2, 5

<u>**MEMORANDUM OF LAW IN SUPPORT**</u>

## I.      INTRODUCTION

Each of Plaintiff's causes of action fail to state a claim upon which relief can be granted. Accordingly, Giggle, LLC d/b/a Giggle Finance ("Giggle"), by and through undersigned counsel, respectfully requests that this Court dismiss with prejudice Plaintiff's First Amended Class Action Complaint (the "FAC") (ECF No. 26), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     FACTUAL ALLEGATIONS

Plaintiff is a Nevada citizen. FAC ¶ 10. Defendant is domestic limited liability company with a principal place of business in Miami, Florida, offering financing for "gig economy" workers. FAC ¶ 31. The Complaint alleges that Defendant received Plaintiff's personally identifiable information ("PII") in connection with services Plaintiff allegedly obtained. FAC ¶ 11. Plaintiff generally alleges that this PII included her name and Social Security number. FAC ¶ 1.

According to the FAC, on or about November 10 to November 15, 2024, Defendant suffered a data breach incident (the "Incident"), which Defendant discovered as early as November 15, 2024, and that on or about September 16, 2025, Defendant notified Plaintiff about the Incident. FAC ¶ 3. Plaintiff generally alleges that Defendant failed to implement adequate and reasonable measures to safeguard Plaintiff's PII.  FAC ¶ 5.

The FAC alleges that since the Incident, Plaintiff has received four notifications from Experian regarding unspecified personal data appearing on the dark web, FAC ¶ 19; has experienced unspecific fraudulent charges on her debit card and checking account, which she disputed and which resulted in the replacement of her debit card, FAC ¶ 21; has experienced fraudulent accounts opened using her information, FAC ¶ 22; has been unable to obtain additional credit cards or open additional banking accounts, FAC ¶ 26, and has experienced an increase in

spam calls, texts, and emails, FAC ¶ 27. Specifically, Plaintiff alleges that at some time since the Incident, she received an alert from a credit union regarding the purchase of a hotel room, which she disputed, FAC ¶ 23; and that an unknown party opened a checking account in her name at Navy Federal Credit Union which has been charged with "thousands of dollars," FAC ¶ 24. Plaintiff also alleges a number of generalized purported harms, including spending "multiple hours every week" on mitigation efforts, FAC ¶ 28; diminution in the value of her PII, FAC ¶ 16; anxiety, annoyance, interference, and inconvenience, FAC ¶ 17; and an alleged increased risk of fraud, identity theft, and misuse, FAC ¶ 18.

Plaintiff brings this putative class action on behalf of herself and a nationwide class of "[a]ll individuals whose Private Information was exposed to unauthorized third parties as a result of the data breach allegedly discovered by Defendant on or before November 15, 2024." FAC ¶ 33. On behalf of herself and this nationwide class, Plaintiff asserts three common law causes of action, for negligence (FAC ¶¶ 80–104), breach of implied contract (FAC ¶¶ 105–12), and breach of the implied covenant of good faith and fair dealing (FAC ¶¶ 113–17).

### III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal is therefore permitted 'when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (quoting *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

While the Court must accept the well-pled allegations of the Complaint as true and construe

2

them in the light most favorable to Plaintiff, the Complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## IV.  ARGUMENT

### A.  Plaintiff Fails to State a Claim for Negligence.

To establish a cause of action for negligence, Plaintiff must plead plausible facts sufficient to that establish: (1) defendant owed plaintiff a duty; (2) defendant breached that duty; (3) defendant's breach caused injury to plaintiff; and (4) plaintiff's damage was caused by the injury to the plaintiff as a result of the defendant's breach of that duty. *In re Mednax Service, Inc.,* 603 F. Supp. 3d 1183, 1222 (S.D. Fla. 2022); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (quoting *Delgado v. Laundromax, Inc.*, 65 So.3d 1087, 1089 (Fla. Dist. Ct. App. 2011)). Plaintiff's claim fails for several reasons as described herein.

As a preliminary matter, Plaintiff's negligence claim amounts to an impermissible "shotgun" pleading. A pleading is a so-called shotgun pleading if it fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (stating that a pleading that violates Rule 8(a)(2) is known as a 'shotgun pleading' and must be dismissed under the Rules). Such counts must be dismissed. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) ("A district court has the 'inherent authority to control its docket and ensure the prompt

3

resolution of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds." (quoting *Weiland*, 792 F.3d at 1320)). Relevant to this claim, impermissible shotgun pleadings include single counts which purport to plead multiple theories of liability, particularly with respect to negligent training and supervision. *See, e.g., Desue v. 20/20 Eye Care Network, Inc.*, No. 21-civ-61275-RAR, 2022 WL 796367, at *7 (S.D. Fla. Mar. 15, 2022) ("Plaintiffs' negligence claim is a classic shotgun pleading. Within one count of negligence, Plaintiffs plead multiple causes of action, including a common law theory of negligence, negligence *per se*, negligent hiring, negligent training, and negligent supervision.").

Here, in Count 1, Plaintiff asserts at least eight separate theories of negligence. FAC ¶¶ 91a–h (including failure to provide adequate security systems, untimely disclosure, disregard of standard information security procedures, inadequate supervision and oversight, inadequate training of employees, failure to enforce security policies, failure to implement breach detection processes, and failure to encrypt personal information and monitor user behavior). Such pleadings have been deemed impermissible shotgun pleadings in other recent data breach actions before this Court. *See, e.g.*, *Cravens v. Garda CL Se., Inc.*, No. 24-CV-80400-RLR, 2024 WL 5058304, at *7 (S.D. Fla. Dec. 9, 2024) (finding data breach plaintiffs did not sufficiently state a claim for negligent supervision because "[a]t a minimum, negligent supervision and negligent training are separate claims which must be pled separately" (quoting *Desue*, internal quotation marks omitted)); *Mednax*, 603 F. Supp. 3d at 1209 (holding that the plaintiffs' negligence count "impermissibly lumps together two separate causes of action—negligent supervision and negligent training. Ordinarily, the Court would require Plaintiffs to separate these two causes of action. But as … Plaintiffs allege no facts to support a finding of either negligent supervision or negligent training, [the negligence count] is dismissed with prejudice and the point is moot."); *see also In re*

4

*Food for the Poor, Inc., Data Brach Litigation*, Case No. 0:25-cv-60973-EA, Order Granting Defendant's Motion to Dismiss (S.D. Fla. Nov. 17, 2025) (ECF No. 33) (unpublished opinion attached hereto as Exhibit A) at 3 ("In Count I, the plaintiffs assert *at least four different* theories of negligence: (1) negligent maintenance of the defendant's security systems, (2) negligent warning in a timely manner of when the data breach occurred, (3) negligent training of employees, and (4) negligent supervision of agents. Because Count I contains multiple different theories of negligence, it is a shotgun pleading…. Thus, Count I must be dismissed.").[1] So too should Plaintiff's first cause of action here be dismissed—if not in its entirety, then at a minimum any claim for negligence founded in Defendant's training or supervision warrants dismissal.

Notwithstanding this pleading deficiency, Plaintiff's negligence claim also fails for the following reasons, including with respect to certain theories of Defendant's alleged breaches of any duties owed to Plaintiff with respect to the Incident, and also because Plaintiff fails to adequately plead that her purported damages are sufficiently causally connected to any such breaches in duty by Defendant. A complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" in order to survive a challenge under Rule 12(b)(6). *See Twombly*, 550 U.S. at 570. Here, Plaintiff has not alleged sufficient factual content to allow such an inference.

First warranting dismissal is any theory of negligence *per se* on the basis of Plaintiff's allegations regarding the Federal Trade Commission Act ("FTC Act"). FAC ¶¶ 100–01. It is well established that "[t]here is no private cause of action implied under the Federal Trade Commission

---

[1] While unpublished opinions may not be relied upon as binding precedent, the Court may cite such opinions when the Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); *see generally* Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Act." *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020); *see also, e.g.*, *Conner, et al. v. CPAP Medical Supplies and Services Inc.*, No. 3:25-CV-945-WWB-LLL, 2026 WL 1506098, at *5 (M.D. Fla. May 29, 2026) (dismissing data breach plaintiffs' claim premised on alleged FTC Act violations for this reason).

Moreover, with respect to Plaintiff's alleged theory of breach regarding Defendant's timely discovery of the Incident, Plaintiff's allegations also fail. Plaintiff alleges that Defendant "fail[ed] to implement processes to quickly detect data breaches, security incidents or intrusions." FAC ¶ 91g.  This allegation is similar to a claim advanced in *Crowe* and dismissed by this Court, where the plaintiffs failed to "explain why a security system is inadequate if it fails to detect a breach instantaneously. As such, Plaintiffs have not adequately alleged that Defendants breached their duty to implement processes that would timely detect security breaches." *Crowe v. Managed Care of N. Am. Inc.*, No. 23-61065-CIV, 2024 WL 6863341, at *7 (S.D. Fla. Aug. 16, 2024). Specifically, this Court reasoned that the plaintiffs "fail[ed] to explain how identifying a breach eight days after it occurred, especially when the attack was conducted by one of the most prominent cybercriminals in the world, shows that their systems are inadequate." *Id.* This eight-day period is even longer than the timeframe Plaintiff alleges here. Here, Plaintiff alleges that the Incident occurred over a five-day period, from November 10 to November 15, 2024, with Defendant discovering the breach on the fifth day November 15, 2024. FAC ¶ 3. Plaintiff's negligence claim, as premised on this theory of liability, also fails as a result of Plaintiff's failure to show that any injury resulted as a cause. For example, in *Crowe*, while the Court was willing to potentially credit the plaintiffs' allegations regarding timely notification of the breach, the Court nevertheless found that such a claim could not be substantiated by allegations of damages suffered *generally* from the breach, rather than "damages unique to [the d]efendants' failure to timely notify them." *Crowe*,

2024 WL 6863341, at *7. So is the case here, with respect to Plaintiff's notification theory.

Similar issues arise with respect to Plaintiff's theory of negligence regarding Defendant's security systems. For example, the *Crowe* plaintiffs also advanced similar claims regarding alleged failures to exercise reasonable care and implement adequate security systems and to maintain security systems consistent with industry standards. *Crowe*, 2024 WL 6863341, at *6.

> But Plaintiffs fail to allege how so. They offer no facts in support of these otherwise conclusory claims that demonstrate how the Defendants' security systems were deficient. Throughout the CAC Plaintiffs insinuate that since the Data Breach occurred, Defendants' systems must have been deficient. But as will be a theme throughout this order, the existence of a breach, by itself, does not show that systems were inadequate. Plaintiffs' claim that it does is simply conclusory. And since Plaintiffs offer no other support for its claim that Defendants breached its duty to safeguard Plaintiffs' Private Information, this purported breach cannot support a claim for negligence.

*Id.* So is the case here, and this theory of breach should likewise be dismissed.

Certain of Plaintiff's alleged theories of harm also warrant dismissal. For example, while Plaintiff alleges lost time to "explor[e] credit monitoring and identity theft insurance options," she does not allege that she actually spent any money on credit monitoring or other identity protection. Similarly, Plaintiff alleges annoyance and anxiety, but does not allege having sought any medical treatment or having suffered any physical manifestation of this supposed injury. Likewise, while the FAC alleges diminution in the value of Plaintiff's PII, Plaintiff does not allege any personal intent to monetize her personal information. These vague references to lost time, emotional distress, and lost value of personal information are insufficient at the pleading stage.

Finally, Plaintiff's negligence claim fails significantly with respect to causation. Proximate cause requires that a "defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 23 (Fla. 4th DCA 2022) (internal quotation omitted) (emphasis added). "A negligent act is not the proximate cause of a loss that results from the intervention of a new and independent cause that is not reasonably

7

foreseeable." *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981) (applying Florida law). "Generally, to prove that a data breach caused identity theft, the pleadings must include allegations of a nexus between the two instances *beyond allegations of time and sequence*." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012) (emphasis added).

In *Resnick*, the Eleventh Circuit addressed the importance of pleading causation in a data breach setting, holding that a plaintiff's failure to plead specific facts tending to show proximate causation constitutes a clear ground for dismissal. *Id.* at 1325. The complaint in *Resnick* alleged extraordinary measures that the plaintiffs had taken to protect their PII before the data breach, including (1) never having previously submitted their PII over the internet or other unsecure source; (2) never having stored their PII on a computer or media device; (3) storing PII in a secure physical location; (4) always destroying any documents containing PII that they received in the mail; and (5) never previously having experienced identity theft. *Id.* Reviewing this specific combination of preventative measures, the Eleventh Circuit concluded that plaintiffs had sufficiently pled causation, but warned that if plaintiffs had "alleged fewer facts, we doubt whether the Complaint could have survived a motion to dismiss." *Id.* at 1327

In *Allgood v. Paperless Pay Corporation*, a similar conclusion was reached. No. 3:20-cv-516-MMH-MCR, 2022 WL 846070 (M.D. Fla. March 22, 2022). There, despite the plaintiffs' allegations that they had been the victims of identity theft nine and twelve months after the subject data breach occurred, the court found that they had "present[ed] no additional factual allegations to suggest that the connection between the two events in this case amounts to more than a mere coincidence of time and sequence." *Id.* at *10. This holding was based on several determinations, including finding that the plaintiffs had "not allege[d] enough facts to permit the Court to infer that their sensitive information actually was stolen when the unauthorized individual entered [the

8

defendant]'s server," as opposed to merely accessed. *Id.* Specifically, the court explained that

> While Plaintiffs' allegations certainly raise the possibility that the [] Data Breach could have caused their alleged damages, a possible claim is not the same thing as a plausible claim. It is possible that Plaintiffs' personal information was stolen in the Data Breach. It is also possible that the bad actor was unsuccessful in exfiltrating any data at all. And it is possible that the bad actors who attempted to file the false unemployment claims obtained the information they used as a result of the Data Breach. But, it is also possible that the bad actors obtained the information before, or after and wholly apart from, the Data Breach. Nothing in Plaintiffs' Complaint make one scenario more plausible than the other. Under *Twombly* and *Iqbal*, only plausible—not merely possible—claims survive a Rule 12(b)(6) motion to dismiss.

*Id.* at *11. The court further held that causation was not adequately plead because the plaintiffs did "not allege that they carefully guarded their sensitive information, nor d[id] they allege that they ha[d] never been victims of identity theft," which may have "provided a basis to infer a nexus between the [breach] and the subsequent identity theft." *Id.* at *10. Ultimately, the court held that

> the inferential leap required to conclude that the Data Breach caused the Plaintiffs' attempted identity theft is significant, and Plaintiffs have failed to present additional factual allegations sufficient to support an inference of 'a logical connection between the two incidents.' Plaintiffs allege a temporal connection in time and sequence, although not a short one, and drawing all inferences in their favor, they allege that the attempted identity thieves used a social security number and personally identifiable information that would have been stored on [the defendant]'s server. But, under *Resnick*, without additional facts, these allegations are not enough to plausibly plead causation. While Plaintiffs' allegations certainly raise the possibility that the [] Data Breach could have caused their alleged damages, a possible claim is not the same thing as a plausible claim.

*Id.* And so Florida federal courts have continued to hold since *Resnick* and *Allgood*.

For example—and most recently—another similar data breach negligence claim was dismissed on this basis just last week in *Conner, et al. v. CPAP Medical Supplies and Services Inc.*, 2026 WL 1506098, at *6 ("Alleging a logical connection can be a relatively modest hurdle. Still, Plaintiffs fail to clear it."). There, the plaintiffs alleged being informed that the defendant's network, which contained their personal data (including *inter alia* their Social Security numbers, financial and banking information, and health information), had been accessed by an unauthorized

9

actor. *Id.* The plaintiffs also alleged a number of purported harms, including having experienced fraudulent bank charges, unauthorized credit inquiries, and multiple notifications of their data appearing on the dark web. *Id.* at *1. But the court found that causation was not sufficiently plead on a number of grounds.

"[C]louding the plausibility of Plaintiffs' negligence claim [was] their conclusory allegations regarding the theft of their Private Information." *Id.* at *7 (comparing the claims to *Allgood* to note that there were not sufficient facts pled to tie the incident as alleged to the purported theft of information as alleged). As one example "illustrative of just some of the inferences and speculation required by all Plaintiffs' allegations," the court noted that "[t]aking all inferences in Plaintiffs favor, it is easy enough to assume that, for instance, [one plaintiff]'s fraudulent charge was connected to the theft or compromise of his banking information. Yet he does not specifically allege that, nor does he allege that Defendant's notice letter informed him that his banking information was even stolen." *Id.* at *6. These "pleading defects surrounding the alleged theft of Plaintiffs' Private Information leave it equally possible that the bad actor was unsuccessful in exfiltrating any data at all." *Id.* (internal quote and cite omitted) (further noting that "all Plaintiffs complain of experiencing upticks in spam communications, but all fail to allege that their phone numbers or e-mail addresses were compromised in Defendant's data breach"). The court went on to explain that the "logical connection between Plaintiffs' harms and Defendant's [] data breach only continues to blur from there," because "no Plaintiff allege[d] that this is the first time his or her Private Information ha[d] been compromised." *Id.* at *7.

Ultimately, the *Conner* court concluded that the fact "[t]hat some Plaintiffs have suffered harms consistent with a data breach is, at best, 'merely consistent with' the possibility that the harms stemmed from Defendant's data breach" but "[t]hat some Plaintiffs have suffered harms

consistent with a data breach does not, however, 'plausibly suggest[ ]' that their harms originated from Defendant's data breach, much less its conduct with regard to implementing security measures." *Id*. ("Because Plaintiffs' only well-pleaded allegations of a nexus between their harms and Defendant's data breach are time and sequence, and because Plaintiffs' well-pleaded allegations of a nexus between their harms and Defendant's negligent actions are even more tenuous, Plaintiffs fail to state a claim for negligence.").

Here, as described above, and as in *Resnick*, *Allgood*, and *Conner*, Plaintiff has failed to pled sufficient *factual* allegations showing a causal link between Defendant's alleged conduct and Plaintiff's alleged harm. Without more than speculative or conclusory assertions, Plaintiff's negligence claim does not satisfy the threshold for plausibility and therefore should be dismissed.

### B.  Plaintiff Fails to State a Claim for Breach of Implied Contract.

A "contract implied in fact" is based on a tacit promise inferred in whole or in part from the parties' conduct. *See Rhythm & Hues, LLC v. Nature's Lawn Care, Inc*., 368 So. 3d 12, 15 (Fla. Dist. Ct. App. 2023). Under Florida law, a breach of an implied contract is analyzed the same as breach of an express contract. *See Resnick v. AvMed, Inc*., 693 F.3d 1317, 1325 (11th Cir. 2012). Accordingly, Plaintiff must allege: (1) the existence of a contract; (2) a material breach of the contract by the defendant; and (3) damages resulting from the defendant's breach of the contract. *See Mink v. Smith & Nephew, Inc*., 860 F.3d 1319, 1332 (11th Cir. 2017).

Florida courts "should determine and give to the alleged implied contract 'the effect which the parties, as fair and reasonable men, presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly thereto.'" *SBP Homes, LLC v. 84 Lumber Co.*, 384 So. 3d 241, 245 (Fla. Dist. Ct. App. 2024) (quoting *Bromer v. Florida Power & Light Co*., 45 So. 2d 658, 660 (Fla. 1950)).

In the data breach context, "[m]any federal courts have held that an implied contract to safeguard customers' sensitive data could reasonably be found to exist in transactions where consumers are solicited or invited to provide personal information in exchange for a good or service." *Mednax*, 603 F. Supp. 3d at 1221 (cites omitted). But critically, this "good or service" must be akin to "data security services" and not a "good or service" that has a "merely incidental" data security benefit. *Id.* at 1215 (cite omitted). Accordingly, Florida federal courts assessing such data breach actions have dismissed similar breach of implied contract claims. *See, e.g.*, *Conner*, 2026 WL 1506098, at *8 (explaining that to survive dismissal, the plaintiffs would " need to allege facts showing conduct between the parties manifesting an intent to enter into an agreement *in which Defendant would safeguard Plaintiffs' Private Information in exchange for some form of consideration*," and but finding that the plaintiffs merely "allege[d] legal conclusions [to] argue that formation occurred simply because they provided Defendant with their Private Information"); *Mednax*, 603 F. Supp. 3d at 1221 ("Plaintiffs' allegations reveal only that they provided their personal information as required to receive healthcare services from Defendants—not data security services beyond the privacy requirements already imposed on Defendants by federal law."); *see also In re Food for the Poor*, ECF No. 33 (attached hereto as Exhibit A) at 4 (holding that "because 'obtaining employee benefits' and 'making charitable donations' are not 'data security services,' Count II fails to state a claim for breach of an implied contract and must also be dismissed.").

Here, Plaintiff alleges that Defendant received her PII in connection with services she allegedly obtained from Defendant, FAC ¶ 11, a company which she alleges offers financing for "gig economy" workers, FAC ¶ 31. As in *Mednax*, *Conner*, and other similar cases, "Plaintiff['s] allegations reveal only that [she] provided [her] personal information as required to receive []

12

services from Defendant[]—not data security services beyond the privacy requirements already imposed on Defendant[] by federal law." *Mednax*, 603 F. Supp. 3d at 1221.

Thus, her claim for breach of implied contract fails and warrants dismissal.

### C. Plaintiff Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Plaintiff's final cause of action relates to the implied covenant of good faith and fair dealing, which Plaintiff alleges Defendant breached by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the data incident, and by continuing to accept and store PII after it knew or should have known of the security vulnerabilities of the systems that were exploited in the incident. FAC ¶ 116.

While every contract contains an implied covenant of good faith and fair dealing under Florida law, a breach of this covenant—standing alone—does not create an independent cause of action. *Resnick*, 693 F.3d at 1329 (quoting *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005)). The duty of good faith must "relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Id.* (cite omitted). Given that the only contract Plaintiff pleads is an implied contract, it is unclear what express contractual term this cause of action could relate to. Indeed, "a claim for the breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Mednax*, 603 F. Supp. 3d at 1210 (quoting *Centurion*, 420 F.3d at 1152). As discussed above, Plaintiff does not plausibly allege the existence of a contract between the parties, nor does Plaintiff sufficiently identify any express term of an alleged contract that Defendant allegedly breached. *See id.* Thus,

on this basis alone, Plaintiff's standalone claim for breach of the implied covenant of good faith and fair dealing should be dismissed.

Moreover, a claimant asserting a cause of action for breach of the implied covenant must allege "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party." *Id.* (cite omitted). While the Complaint alleges in a conclusory fashion that Defendant "acted in bad faith and/or with malicious motive," FAC ¶ 117, it lacks facts to substantiate this allegation. The plaintiffs in *Resnick* faced a similar issue, where the court dismissed the same cause of action, finding that the plaintiffs failed to allege that the defendant's failures to secure their data resulted from a conscious and deliberate act. *Id.* So too should this claim here be dismissed.

## V.   CONCLUSION

For all of the foregoing reasons, and because further leave to amend would be futile, Defendant Giggle, LLC d/b/a Giggle Finance respectfully requests that this Court grant its Motion and dismiss Plaintiff's First Amended Class Action Complaint with prejudice.

Dated: June 5, 2026

/s/ Sarah A. Long
SARAH A. LONG, ESQ.
Florida Bar No.: 0080543
MCDONALD TOOLE RICHMAN &
CORRENTI, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL  32801
Telephone: (407) 246-1800
Facsimile: (407) 246-1895

Paulyne Gardner*
**MULLEN COUGHLIN LLC**
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
Telephone: (267) 930-2098

14

pgardner@mullen.law

*Pro hac vice*
*Attorneys for Defendant Giggle, LLC d/b/a*
*Giggle Finance*

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026, a true and correct copy of the foregoing document was filed electronically via the Court's CM/ECF system, which caused a copy to be served on all counsel of record.

Dated: June 5, 2026

By:   */s/ Sarah A. Long*
Sarah A. Long